STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

AUG   2 2001

RECEIVED AND FILED
Susan Guillette, Clerk

STATE OF MAINE

KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-020
JRA - KNO - 8/1/2001

DEBORAH O. ATWELL,
et al.,

        Plaintiffs

    v.

CITY OF ROCKLAND,

        Defendant

DECISION AND ORDER

## I.    Introduction.

This is an appeal via M.R. Civ. P. 80B brought by Rockland residents who contest the legitimacy of that city's action in approving a municipal development district and a tax increment financing district pursuant to 30-A M.R.S.A. § 5251 *et seq*. The sole basis of their appeal to this court is that the City of Rockland (City or Rockland) failed to provide the statutorily required notice for its public hearing which is legislatively mandated before a municipality may create a municipal development district (MDD), or a tax increment financing district (TIFD) (the district or districts). 30-A M.R.S.A. §§ 5253(1) (Supp. 2000), 5254-A(1-A)(A) (1996).

The plaintiffs allege, and the administrative record confirms, that the notice of the public hearings to create the MDD and the TIFD appeared in a local paper, *The Courier-Gazette*, in an issue of that newspaper dated October 10, 2000. The public hearing to create the districts was held on October 19, 2000. The administrative record also stipulates that the only issue for the court to address is whether or not this notice satisfied the 10-day notice requirement for such a public hearing.

While such an issue appears on its face to be a simple one, the case is complicated by the defendant's efforts to overcome the failure of the administrative record to reflect its alleged "fact" that the notice which appeared in The Courier-Gazette dated October 10, 2000, was actually published the day before, October 9, 2000, so that the public did receive the full 10-day notice of the hearing which was conducted on October 19, 2000.

This effort manifests itself in the defendant's various motions which endeavor to bring to the court's attention the allegation concerning the actual publication date of the subject notice. The plaintiffs resist this attempt by their reliance on the administrative record which contains no reference to the assertion or existence of an earlier publication date.

Before addressing these efforts, it appears that there is no contest as to how time is computed under Maine law. ". . .[I]n computing time, the day of the stated event triggering the time period is excluded from the computation." *Opinion of the Justices*, 484 A.2d 999, 1001 (Me. 1984) (citing 1 M.R.S.A. § 71(12) (1979); M.R. Civ. P. 6(a); and M.R. Crim. P. 45(a)).[1] Thus, a proper 10-day notice for a hearing conducted on October 19, 2000, would have been on October 9, 2000, and not October 10, 2000.

As noted, the record shows that the edition of *The Courier-Gazette* which contained the notice of the public hearing was dated October 10, 2000. The plaintiffs claim that Maine precedent declares that the date a newspaper states it was published is in fact its date of publication. *Riche v. Bar Harbor Water Co.*, 75 Me. 91, 96 (1883). The defendant properly contests this interpretation of *Riche*, but cites no law that would permit this court to conclude as a matter of law, or by the facts properly before it, that a

---

[1] The rules and the statute relied on are nearly identical today.

2

newspaper, particularly this edition of *The Courier-Gazette,* can be found to have been published on the date before the date of publication revealed on the paper itself. Indeed, the modest precedent available supports the common sense exposition that the printed date of the newspaper is generally to be regarded as the date of publication absent evidence to the contrary. *Baugh v. Rural High School District No. 5,* 340 P.2d 891 (Kan. 1959).

> A contrary view would lead to confusion concerning the effective date on which the notice was published, since morning papers are usually printed prior to midnight on the preceding day, and many weekly papers are actually printed on the day prior to the day which they bear.

58 Am.Jur.2d § 53 (1989). Accordingly, the City has taken on the burden of satisfying the court that that the edition of *The Courier-Gazette* which bears the date of October 10 2000, was actually published and circulated the day before, October 9, 2000.

This debate, then, is whether or not the defendant can satisfy the court that it can rely on its claim of an earlier, and therefore proper, notice of hearing. If the defendant fails in this regard, the court must address the additional question as to whether or not a notice which does not adhere to the time requirement for public notice voids the hearing, or may be permitted if there is substantial compliance with the statute and no prejudice to the plaintiffs.

The court will address these issues in the context of each motion presented as well as in the parties' briefs.[2]

---

2 In undertaking this task, the court will not follow the order in which the motions were filed.

## II. Discussion.

### A. Defendant's Motion for Extension of Time to Request Trial of the Facts and Motion for Trial.

Before addressing the merits of these combined motions, it is first necessary to recite the procedural history of this case.

On November 20, 2000, the plaintiffs filed their Rule 80B complaint, contesting the propriety of the public notice in the October 10, 2000 *Courier-Gazette* for the October 19, 2000 public hearing for creating a MDD and a TIFD.

On November 27, 2000, the clerk issued the standard scheduling notice for an 80B action, advising the parties that the plaintiffs' brief is due 40 days after the filing of the complaint and that the plaintiffs have the responsibility to submit the record on or before the date for filing their brief. The defendant was also advised that its brief is due 30 days after the plaintiffs' brief is filed.

As was its prerogative, the City filed no answer to the complaint, but its attorney entered his appearance as required. M.R. Civ. P. 80B(a); 12(a).

On December 1, 2000, the plaintiffs filed a motion for stay and the defendant responded with its opposition which included an affidavit by its attorney. It referenced a second affidavit by David Morse, the publisher of *The Courier-Gazette*, which avers that the edition of that paper dated October 10, 2000, was published and distributed on October 9, 2000.

On January 9, 2001, the plaintiffs filed their brief and the administrative record.[3] The latter represents in its text that counsel for each side met on January 4, 2001, to determine the content of the record and stipulates that it would be limited to the notice

---

[3] The plaintiffs received court approval for the late filing of their brief.

4

which appeared in *The Courier-Gazette*, a copy of which was attached to the record along with the first page of the October 10, 2000 issue. The parties also stipulated that the public hearing occurred on October 19, 2000, and that the sole issue for the appeal was whether or not ". . . the public notice satisfied the 10-day statutory notice requirement in terms of the number of days of the notice publication prior to the public hearing." Administrative Record, p. 2. Consistent with that statement as to the issue to be reviewed, the plaintiffs' six-page brief simply argues that the notice of public hearing in this case was published nine days before the hearing and was therefore legally insufficient because the relevant statutes require 10 days notice. 30-A M.R.S.A. §§ 5253(1), 5254-A(1-A)(A). It also argued that it would make no difference whether or not the plaintiffs attended the public hearing and that nothing in the administrative record indicates who did attend the hearing.

Although the defendant's brief was due on February 8, 2001, on February 16, 2001, it filed its brief, a motion for extension of time in which to file its brief,[4] and this motion for extension of time to request trial of the facts and motion for trial. The plaintiffs have objected to the latter motions, requiring action by this court on these requests.

The defendant explains that it seeks this extension of time to request a trial of the facts based on excusable neglect, namely its attorney's failure to appreciate that the administrative record did not contain information critical to the determination that the

---

[4] The defendant gave as its reason for an extension of time to file its brief that its attorney "failed to calendar correctly the deadline in which to file its Brief after the Plaintiff had been given an extension to file its brief." This motion for extension of time was granted without objection.

5

notice of public hearing had been published 10 days before the hearing was conducted.[5] Accordingly, the defendant seeks a hearing in which it would offer the testimony of the publisher of *The Courier-Gazette* who, it is said, would testify that each of its editions is published and distributed by 6:00 p.m. the day before the stated date of publication. If permitted to do so, the defendant could arguably prove its claim that the October 10, 2000 edition of this paper was published and distributed on October 9 and thereby establish that the City provided the 10-day notice that the statutes demand.

In support of this request, the defendant argues that the extension of time would not inconvenience the court or the plaintiffs because a trial of the facts would be quite brief. Moreover, to deny the motion would create an injustice to the defendant. Last, the defendant concedes that the affidavit of Mr. Morse is not part of the administrative record, but has become part of the court's record by its attachment to the defendant's objection to the plaintiffs' request for a stay.

M.R. Civ. P. 80B(d) reads as follows:

> **(d) Motion for Trial; Waiver.** If the court finds on motion that a party to a review of governmental action is entitled to a trial of the facts, the court shall order a trial to permit the introduction of evidence that does not appear in the record of governmental action and that is not stipulated. Such motion shall be filed within 30 days after the complaint is filed. The failure of a party to file said motion shall constitute a waiver of any right to a trial of the facts. Upon filing of a motion for trial of the facts, the time limits contained in this rule shall cease to run pending the issuance of an appropriate order of court specifying the future course of proceedings with that motion. With the motion the moving party shall also file a detailed statement, in the nature of an offer of proof, of the evidence that the party intends to introduce at trial. That statement shall be sufficient to permit the court to make a proper determination as to whether any trial of the facts as presented in the motion and offer of proof is appropriate under this rule and if so to what extent. After

---

[5] This assertion is merely recited in the text of this motion and is not supported by affidavit or the like.

hearing, the court shall issue an appropriate order specifying the future course of proceedings.

The critical text in this rule on which the plaintiffs rely is the requirement that a motion for trial of the facts ". . . shall be filed within 30 days after the complaint is filed. The failure of a party to file said motion shall constitute a waiver of any right to a trial of the facts." Thus, the plaintiffs argue, because the complaint was fled on November 20, 2000, the motion for trial of the facts had to be filed on December 20, 2000, and not some 57 days later on February 16, 2001. They also assert that the language of the rule leaves no option for an extension of time because it can only be read as an automatic waiver if the 30-day time period has been missed.

M.R. Civ. P. 6(b), however, does allow an extension of time after the expiration of time periods set by the Rules of Civil Procedure except for the time limits of the rules there specified, which do not include Rule 80B,[6] but the court can only do so upon a showing of excusable neglect.

Thus, if the defendant can establish excusable neglect for its failure to adhere to the time period for filing a motion for trial of the facts as prescribed by M.R. Civ. P. 80B(d), then the court is authorized to allow the late filing of this motion.

"The standard for determining an excusable neglect defense is a strict one and can be met only when there are extraordinary circumstances that work an injustice." *Gregory v. City of Calais*, 2001 ME 82, ¶ 7, 771 A.2d 383, 386. "A mere palpable mistake by counsel or counsel's staff does not constitute excusable neglect . . ." *Id.* at ¶ 8. Nevertheless, the court does have some discretion in the enforcement of procedural

---

[6] Because Rule 6 does not exclude M.R. Civ. .P. 80B(d) from its purview, the court has the discretion to apply it to this circumstance. Otherwise, the Civil Rules would have specifically excluded Rule 80B(d) from the reach of Rule 6. *See Gregory v. City of Calais*, 2001 ME 82, ¶ 6, n.6, 771 A.2d 383, 386.

7

rules. *Id.* at ¶ 7. Such discretionary range includes the granting or denial of an enlargement of time. *Id.* at ¶ 9.

In the court's view, the defendant cannot establish excusable neglect on this record. Its sole reason for missing the 30-day deadline to file a motion for trial of the facts was its alleged failure to appreciate that the record would not contain evidence that *The Courier-Gazette* was published and distributed the day before the date which appears on the paper itself, evidence which the defendant had in its possession on November 16, 2000. *See* Affidavit in Opposition to Plaintiffs' Motion for Stay.[7] From the outset of this litigation that allegation and the significance of the publication date of that newspaper has been the sole issue that this court would be asked to review. It would be impossible, then, for the defendant to fail to recognize the importance of proving its contentions. However, it took no action to preserve its opportunity to establish the adequacy of the public notice which the plaintiffs challenge. It did not answer the complaint, which it need not, M.R. Civ. P. 80B(a), but could have in order to use that opportunity to deny the plaintiffs' claims, and then sought, via M.R. Civ. P. 80B(d), a trial to prove its claim that *The Courier-Gazette* was published the day before the plaintiffs say.

Next, it allowed and stipulated to an administrative record which makes no mention of the defendant's sole contention as to the publication date of this paper. This is particularly remarkable in that the record is strikingly brief and concerns only the central issue in this case, namely the significance of the paper's publication and distribution date. So, even if the defendant at first failed to appreciate the importance of

---

[7] Thus, the defendant knew of the "fact," and its significance, that *The Courier-Gazette* was printed and distributed the day before the date which appears on the paper before the plaintiffs filed their complaint.

proving its claim as to this date when it received the complaint, it could not have misunderstood the significance of the absence in the record of its alleged "fact" as to the publication date of *The Courier-Gazette*. Moreover, even after the defendant had missed the obvious opportunity that Rule 80B(d) presented to establish *The Courier-Gazette's* date of publication, it could have either sought agreement to include its "facts" in the record, or turned to this court for assistance in resolving any dispute as to the contents of the record. M.R. Civ. P. 80B(e).

It did not do any of these things, appreciating as it must that once the record was filed, the court's review would be limited to that record. M.R. Civ. P. 80B(f). Instead, the defendant waited until the plaintiffs' brief was filed and then filed this motion contemporaneously with its late brief, nearly two months after a motion for trial of the facts was required to be filed by the rules.

Such repeated missteps, which have been assigned to the failure to appreciate the significance of the absence in the record of the sole factual claim the defendant here relies on, simply cannot be considered excusable neglect. Indeed, it is much the opposite. It is "palpable," i.e., "easily perceived, obvious,"[8] neglect that falls short of the extraordinary circumstances which would otherwise support a finding of excusable neglect. *Begin v. Jerry's Sunoco*, 435 A.2d 1079, 1083 (Me. 1981) *Casco Bay Island Transit District v. Public Utilities Commission*, 528 A.2d 448, 451 (Me. 1987). Accordingly, this motion must be denied.

In reaching this conclusion the court is mindful of the circumstances of this case, namely that a trial of the facts would be brief, that it would not seriously prejudice the

---

8 Webster's II New Riverside University Dictionary, The Riverside Publishing Company, 1984.

plaintiffs in that little time or preparation would be required for a trial, and that this case is important to the defendants. The court is also mindful that the Rules of Civil Procedure are to be interpreted "to secure the just, speedy, and inexpensive, determination of every action." M.R. Civ. P. 1. But to extend the time period for filing a motion for trial of the facts on the sole basis cited would vitiate the unambiguous mandate of M.R. Civ. P. 80B(d) that the failure to seek a trial of the facts within 30 days of the filing of the complaint constitutes a waiver of any right to a trial. *Id.* It would also be contrary to the cited purpose of Rule 1 in that the defendant's inaction has delayed this case which, if properly constructed via M.R. Civ. P. 80B, would most likely have been disposed of by now. Most importantly, to accept the defendant's reason for its request -- some 57 days after the applicable time period had expired -- would render the excusable neglect standard meaningless, allowing any manner of error or oversight by counsel to suffice as an acceptable excuse for late action. *Begin v. Jerry's Sunoco,*435 A.2d at 1083.

Because the motion for Extension of Time to Request Trial of the Facts is denied, it follows perforce that the Motion for Trial must also be denied for the reasons provided herein.

For all these reasons, then, these motions are to be denied.

10

**B.    Plaintiffs' Motion to Strike Portions of Defendant's Brief and its Attachment.**

This motion, filed on February 22, 2001, seeks to have stricken from the defendant's brief any references to evidence which does not appear in the administrative record, including an attachment to its brief.[9]

The plaintiffs correctly advise the court that a review of governmental action via M.R. Civ. P. 80B "shall be  based upon the record of the proceedings before the governmental agency." *Id.* at subparagraph (f).  The record here has been agreed to and makes no reference to the evidence cited by the defendant in its brief as to the "actual" publication date of *The Courier-Gazette*.  That being so, and because the defendant never sought an augmentation of the record via M.R. Civ. P. 80B(e) and did not submit its proposed record with its motion for trial of the facts as the same rule requires, the references to which the plaintiffs object are not part of the record, not properly referenced in the defendant's brief, and cannot be considered by the court.

This conclusion is supported by the Law Court's decision in *Baker's Table, Inc. v. City of Portland*, 2000 ME, ¶ 9, 743 A.2d 237, 240, which holds that the purpose of M.R. Civ. P. 80B(d) is to allow the augmentation of the record with facts relevant to the court's review of agency action which were not in the record.  To accomplish this, however, the party wishing the record to be expanded pursuant to this rule must, of course, comply with the rule's conditions.  As noted, infra, this did not occur here and the record has not been, nor can it now, be supplemented to include the "'facts" the defendant wishes the court to be aware of.  Moreover, a party who fails to get facts

---

9 This motion and the appellee's brief make reference to David Morse's affidavit being attached to this brief.  While it may have been attached to the copy sent to the appellant, it is not attached to the original brief filed with this court on February 16, 2001.  That being so, it need not be stricken because the court never received it as an attachment to the brief.

11

properly before the court by the rules which specify how that is to be accomplished cannot circumvent those rules by simply reciting those "facts" in its brief. All this being so, the court cannot consider the factual assertions in the defendant's brief to which the plaintiffs object, this motion must be granted, and the text in the defendant's brief to which the plaintiffs object must be excised.

### C.  Request for Judicial Notice.

This document, filed by the defendant on March 12, 2001, after the filing of its brief and its motion for extension of time to request trial of the facts and its motion for trial, is designed either to have judicial notice taken at the trial of the facts, or to rely on this evidentiary vehicle to augment the record.[10] Either way, this effort must fail.

First, as separately decided herein, there is to be no trial of the facts in this case because the defendant sought such a proceeding after the time within which to do so had expired and has not established excusable neglect for this oversight. Because there will be no trial, there will be no evidentiary hearing at which the Rules of Evidence will be applied. That being so, the court will have no opportunity to take judicial notice of facts to be considered as evidence.

Next, to take judicial notice of a fact which the defendant could have properly presented to the court, but did not by its failure to seek a supplemented record or to timely ask for a trial of the facts via M.R. Civ. P. 80B(d), (e), would render those rules

---

[10] Curiously, the defendant asks the court to take judicial notice that *The Courier-Gazette* was published on October 9 rather than October 10 as printed on the paper itself, when the text of the request states, "This appeal is not and should not be about when *The Courier-Gazette* is published, the issue is simply whether the 'date of publication' as announced in *Richie* (sic) is the day it is published or the day on the paper's masthead." If this appeal is not about when *The Courier-Gazette* published notice of the public hearing, one must question the advocacy for judicial notice of that "fact," and the essence of this appeal as elsewhere described by the parties and as articulated in the agreed upon administrative record.

12

meaningless. This is particularly so where this court is essentially acting as an appellate court whose review is limited to either an agreed upon record or the record of the agency whose action is being reviewed. *Id.*, at subparagraphs (f), (e). To augment the record or to accept evidence outside this prescribed process would, of course, be improper, as it would have this court take and consider evidence that had never been part of the record. While this can be accomplished in an 80B action, it can only be done via the process in that rule which the defendant has not followed. M.R. Civ. P. 80B(d), (e).

Notwithstanding the foregoing, it is true that judicial notice can also be taken during the appellate process, *State v.Taylor* 1997 ME 81, ¶ 10; 694 A.2d 907, 910. Of course, before this may be accomplished, however, the rule governing this form of evidence must be followed. Thus, according to M.R. Evid. 201(e), judicial notice can be taken only when the opposing party, after a request, is given the opportunity to be heard as to the propriety of taking judicial notice and the tenor of what is to be noticed. Here, the plaintiffs have objected to this request and must therefore be given an opportunity to be heard as to the noticeability of the facts proferred by the defendant. Field & Murray, *Maine Evidence* (1999), § 201.5. This, of course, would permit an evidentiary hearing outside the scope and prescriptions of M.R. Civ. P. 80B which, by its text, limits the opportunities of parties to get evidence before the court which is not part of the record. Thus, to conduct a hearing, albeit a brief one, to, in essence, augment the record by allowing the plaintiffs to challenge a fact which may be judicially noticeable, would permit the defendant to accomplish indirectly what it is prohibited from doing directly by the applicable procedural rules. This the court will not permit. The defendant has had at least two legally sanctioned methods to get this "fact" before the

13

court. It did not capitalize on those opportunities. Instead, it has waited until nearly a month after it filed its brief to espouse a third way to get its factual assertion before the court. The appellant's brief, which properly relied on the agreed-upon record, does not address this factual contention because it could not -- the evidence now proposed was not part of that record and would not have been a proper subject of their brief. Thus, it would be unfair to the plaintiffs to participate in developing a new record, albeit a brief one, and then require them to file a new brief, when throughout they have had adhered to Rule 80B's requirements and the other party has not. Such a process would also further delay this case by requiring a hearing and a new briefing schedule when, as noted infra, this case could have been disposed of months ago.

For all these reasons, then, the court will decline to take judicial notice of the "fact" which the defendant alleges.

### D.     Motion to Dismiss for Failure to Join a Party and Failure to State a Claim On Which Relief Can Be Granted.

This motion, filed contemporaneously with the Request for Judicial Notice on March 12, 2001, seeks to have this case dismissed on two bases: the failure to join the State Department of Economic and Community Development (DECD) as a party, and the failure to state a claim on w which relief can be granted. Such a motion must ordinarily be presented "before pleading if a further pleading is permitted." M.R. Civ. P. 12(b). However, because a governmental agency is not required to respond to an 80B complaint, it "may assert at the trial any defense in law or fact to that claim for relief." *Id.* Said differently, although the City is relieved of the requirement of filing a motion to dismiss in a timely response to the plaintiffs' complaint, it was nevertheless required to assert any defenses they could have raised in a motion to dismiss at a trial. Because

14

the City did not ask for a trial as the rules require, M.R. Civ. P. 80B(d), and have waived their rights to this process, there will, of course, be no trial at which they can raise Rule 12(b) defenses. That being so, the motion is not properly before the court and is in order to be denied.

Notwithstanding this conclusion, as to the first of the defendant's claims, namely that the plaintiffs failed to join an indispensable party, the court finds that this assertion lacks merit. First, if the defendant believed at the outset of this litigation that it was necessary to join DECD as a party, it had the option to bring this entity into this case via M.R. Civ. P. 19(a). It did not do so, and has waited until after the record has been created and the briefs have been filed to assert this defect in the case which it could have remedied early on.

Next, the statute makes clear that a MDD is an entity created by a municipality and is not dependent upon DECD for its existence. 30-A M.R.S.A. § 5253(1) (1996). Thus, any challenge to the propriety of the establishment of a MDD does not require the State's participation as a party.

A TIFD is also municipally created, but before it may finally take effect as such, the Commissioner of DECD must approve its "designation." 30-A M.R.S.A. §§ 5253(1)(F) (2000); 5254-A(1-A) (1996).[11] This task by the Commissioner, however, does not include the responsibility to oversee or undertake the municipality's responsibility of providing proper notice to the public of the hearing at which a TIFD may be created by the legislative body. This is purely a municipal function which must

---

[11] The defendant in this motion asserts that the Commissioner of DECD approved the TIFD on November 27, 2000, and describes how this was accomplished. It also provides details as to the city council's creation and adoption of Resolve #64 as to the creation of the TIFD. None of this appears in the administrative record.

be performed locally in accordance with legislative direction. 30-A M.R.S.A. § 5254-A(1-A). If the municipality has failed to adhere to those conditions, the legitimacy of the district's creation is subject to attack no matter what the Commissioner has done thereafter and no matter what his position may be on the propriety of the municipality's efforts or the merits of the challenge to its actions. Said differently, if the municipality has failed to adhere to the legal prerequisites for the creation of a TIFD, the subsequent actions of the Commissioner cannot legitimize those errors, nor could his participation in this litigation affect the merits of this particular dispute, namely whether or not the defendant gave proper statutory notice of the public hearing held to create a TIFD.

So, while it may have been better practice for the plaintiffs to have named the Commissioner of DECD a party as to their challenge to the creation of the TIFD, the defendant could have done so as well. Moreover, the DECD could have, but has not, elected to participate in this case. M.R. Civ. P. 20(a).

In the end, though, complete relief is available to the parties without the participation of DECD and it cannot assist the court in resolving the debate in this case as to whether or not there was proper public notice as to the creation of the TIFD. That being so, its participation in this case is not required.

The second basis for the motion to dismiss is that the plaintiffs have failed to state in their complaint a claim upon which relief can be granted. M.R. Civ. P. 12(b)(6). In support of this claim, the defendant argues that even if the notice of public hearing was nine days rather than the 10 days prescribed by statute, the City has substantially complied with the law and therefore the complaint should be dismissed. This argument goes to the merits of any defense the City may have and not whether or not the

16

plaintiffs' claims are justiciable. As such, the argument, even if it has merit, that the City substantially complied with the statutory notice requirements does not vitiate by itself the plaintiffs' cause of action. Indeed, by the nature of a claim of substantial compliance, the defendant is asking the court to apply its judgment to the merits of both parties' positions in this case. That being so, it necessarily follows that not only have the plaintiffs asserted a claim for which relief can be granted, they may succeed in that endeavor. As such, this argument by the defendant should have been included in its brief which is the vehicle to attack the merits of the plaintiffs' claims and to promote its own argument.

Accordingly, the motion to dismiss cannot be granted on this basis either as it is does not suffice as grounds to dismiss the complaint.

Notwithstanding this conclusion, and the absence of this argument from the defendant's brief, it should be addressed because it is the sole basis on which the defendant may here prevail and the plaintiffs have had fair notice of this contention and the opportunity to respond. That being so, the court will address this aspect of the parties' controversy as though it were properly before it as part of their briefing.

E.    The Parties' Briefs and the Merits of the Case.

From the record and the briefs, it is plain that the notice of the public hearings to create the MDD and the TIFD were published in the local newspaper, *The Courier-Gazette*, in an edition which bore the date of October 10, 2000. Absent any evidence to the contrary, the court must make the reasonable assumption that a newspaper dated October 10 was published and distributed on that day. *See* Section I of this Decision and Order. That being so, and because of the manner in which the passage of days is to be counted under Maine law, *see, e.g.*, 1 M.R.S.A. § 71(12) (1979), the public received nine

17

days' notice instead of the 10 which the law mandates. 30-A M.R.S.A. §§ 5253(1); 5254-A(1-A)(A). As such, the notice of the public hearing to create the MDD and the TIFD was legally inadequate and the action of the body which acted after such infirm notice must be set aside.

The allowable portions of the defendant's brief do not rebut this exposition. However, it retains the argument that even though the notice was deficient, it was only so by one day. As such, it says there was substantial compliance with the law, the plaintiffs were not prejudiced, and the court should not void the City's action at its public hearing.

At the outset, it should be observed that the applicable statutes, 30-A M.R.S.A. §§ 5253(1) (Supp. 2000) 5254-A(1-A)(A) (1996), state that notice "*must* be published" at least 10 days before the hearing. (Emphasis supplied). "'Shall' and 'must' are terms of equal weight that indicate a mandatory duty, action or requirement." 1 M.R.S.A. § 71(9-A) (Supp. 2000). Thus, the City was mandated as a matter of law and a plain rule of statutory construction to give 10 days notice of the subject public meeting. Such a requirement is mandatory rather than directory because it constitutes the manner in which notice must be given. *Seider v. Board of Examiners of Psychologists*, 1998 ME 78, ¶ 6, 710 A.2d 890, 892.

Nevertheless, even a mandatory notice provision can be recharacterized as directory if it is not of the "essence of the thing to be done . . . and by the failure to obey no prejudice will occur to those whose rights are protected by the statute . . ." *Anderson v. Commissioner of the Department of Human Services*, 489 A.2d 1094, 1098 (Me. 1985) (quoting 1A Sutherland, *Statutes and Statutory Construction*, 25.03 at 298-99 (4th ed. C. Sands ed. 1972).

18

So, even though it is the plain legislative object of the cited statutes to give the public 10 days notice of a hearing to create a MDD or a TIFD, if there is no prejudice by the failure to comply precisely with the law, the law will tolerate such a failure if there has been a substantial compliance with the statute and no one has thereby been prejudiced. This is so, even though it may burden the court with conducting an inquiry as to whether or not a complaining party receiving defective notice was nevertheless properly advised of the subject matter of the notice. *Seider, id.* Such an inquiry would be to determine if the parties received the notice and whether or not they were prejudiced by its failure to adhere to the law's requirements. If so established, the court may disregard nonprejudicial failure to comply with notice requirements. *Town of Ogunquit v. Department of Public Safety*, 2001 ME 47, ¶ 11, 767 A.2d 291,294.

Assuming, arguendo, that nine days notice substantially complies with the 10-day notice requirement in the cited statutes, the question then becomes whether or not the plaintiffs were prejudiced by this deficient notice. Indeed, if they were present at the public hearing in question, they would have no argument as to prejudice and may be said to have waived objection to the sufficiency of the public notice. *Crispin v. Town of Scarborough*, 1999 ME 112, ¶ 24, 736 A.2d 241, 249.

Once again, the record fails to assist the court in resolving this question. The administrative record is silent as to who, if anyone, attended the public hearing conducted by the City. That being so, it is impossible to determine that the plaintiffs have not been prejudiced by the deficient notice or have waived any objection to it. It is not enough for the defendant to argue, as it has in its motion to dismiss, that no plaintiffs have been injured or misled or prevented from attending the meeting by virtue of the deficient notice. There is simply no evidence before the court on this

19

question and the plaintiffs' grievance as to the inadequate notice cannot be rebutted by assertions that find no support in the administrative record. That is to say that upon the plaintiffs' showing that the notice was legally inadequate, it is not their burden to show lack of prejudice or absence of waiver. Instead, as the party which erred in the administration of this hearing, it is incumbent upon the defendant to show substantial compliance and lack of prejudice or waiver. This, of course, it cannot do on this record. Accordingly, the City cannot escape the consequences of its noncompliance with the notice requirements of the statute and the action taken by the Rockland City Council on October 19, 2000, must be voided and any action which thereby created a MDD and/or a TIFD must be set aside. *Sewall v. Spinney Creek Oyster Co., Inc.*, 421 A.2d 36, 41 (Me. 1980).

**F.    Plaintiffs' Motion for Stay.**

Because the plaintiffs have prevailed in this matter and the City Council's action on October 19, 2000, which purported to create a MDD and a TIFD is set aside, this motion is to be denied as moot.

**III.    Conclusion.**

The clerk will make the following entries:

> Motion for Extension of Time to Request Trial of the Facts is DENIED; Motion for Trial is DENIED; Plaintiffs' Motion to Strike Portions of Defendant's Brief is GRANTED as prayed for; Request for Judicial Notice is DENIED; Motion to Dismiss for Failure to Join a Party and Failure to State a Claim on Which Relief Can be Granted is DENIED; Plaintiffs' Motion for Stay is DENIED as moot; Judgment is to be ENTERED for the plaintiffs on their complaint. The votes taken by the Rockland City Council on October 19, 2000, to create a Municipal Development District and a Tax Increment Financing District are voided and the creation of said districts are set aside.

So ordered.

Dated: August___/___, 2001                    _____
                                                       John R. Atwood
                                                       Justice, Superior Court

20

Date Filed __11/20/00__ __Knox_____ Docket No. __AP-00-020_____
                                County

Action __80B_____


DEBORAH O. ATWELL, KENNETH S. AXELSON,
JAMES C. EBBERT, LUCETTA B. EBBERT,
ELEANOR C. ERDMAN and MERLIN G. MILLER      vs.  CITY OF ROCKLAND

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Clifford H. Goodall, Esq.<br>61 Winthrop St<br>Augusta ME 04330<br>622-3693 | Greg N. Dorr, Esq.<br>270 Pleasant St<br>Rockland ME 04841<br>594-0305 |

| Date of Entry | |
|---|---|
| 11/21/00 | On 11/20/00, 80B Complaint, Filing Fee and Summary Sheet filed by Attorney Goodall. |
| 11/27/00 | Notice and Briefing Schedule mailed to Attorney Goodall and Greg N. Dorr, Esq, attorney for City of Rockland. |
| 12/1/00 | The following filed by Attorney Goodall:<br>-Plaintiffs' Motion for Stay;<br>-Affidavit in Support for a Stay; and<br>-Proposed Order. |
| 12/11/00 | On 12/8/00, Greg N. Dorr, Esq. enters his appearance on behalf of the Defendant, City of Rockland |
| 12/13/00 | Return of Service on Summons filed:<br>-City of Rockland served through Stuart H. Sylvester, Clerk on 12/1/00. |
| 12/19/00 | On 12/18/00, Memorandum in Opposition to Plaintiff's Motion for Stay and Affidavit in Opposition to Plaintiffs' Motion for Stay filed by Attorney Dorr. |